UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NONA HASRATYAN,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI et al.,<br><br>Respondents. | Case No. 5:26-cv-00210-MCS-ADS<br><br>**ORDER RE: MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 2)** |

Petitioner Nona Hasratyan brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed a motion for a temporary restraining order and for issuance of an order to show cause why a preliminary injunction should not issue. (Mot., ECF No. 2.) The Court ordered briefing on the application. (Order Setting Br. Schedule, ECF No. 6.) Respondents Pamela Bondi, in her official capacity as Attorney General; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; the U.S. Department of Homeland Security; the U.S. Department of Justice; the Warden of the Adelanto Detention Facility; and Jaime Rios, in his official capacity as Immigration and Customs Enforcement ("ICE") Field Office Director, filed a brief opposing the application. (Opp'n, ECF No. 7.) Petitioner filed a reply. (Reply, ECF No. 8.)

The Court heard the application on January 28, 2026. (Mins., ECF No. 9.) The parties stipulated at the hearing that the Court could consider the motion as a motion for a preliminary injunction. The Court orally granted the motion in substantial part. This Order memorializes the Court's reasoning.

I.  **BACKGROUND**

According to the petition, Petitioner is a noncitizen who was paroled into the United States in November 2024 and released from custody under orders to periodically report to Department of Homeland Security authorities. (Pet. ¶¶ 3–4.) She applied for asylum in April 2025 and reported periodically to ICE. (*Id.* ¶¶ 5–6.) In July 2025, ICE detained Petitioner at a regularly scheduled check-in and brought her to a detention center in Adelanto, California, where she is currently detained. (*Id.* ¶ 7.) An immigration judge denied her bond at a hearing conducted in January 2026. (*Id.* ¶ 10.) Petitioner maintains that the immigration judge wrongfully considered evidence from her removal proceedings to determine she was a flight risk. (*Id.* ¶¶ 10, 31.)

Petitioner raises four grounds for habeas relief: (1) violation of her Fifth Amendment right to substantive due process; (2) violation of her Fifth Amendment right to procedural due process; (3) violation of her Fourth Amendment right to be free from unreasonable seizure; and (4) violation of the doctrine set forth in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), in that Respondents failed to follow their own rules and regulations. (*Id.* ¶¶ 32–53.) She seeks a temporary restraining order requiring Respondents to immediately release her on the terms of parole she previously had, and to refrain from re-detaining her absent a further order of this Court or a hearing by an adjudicator relying only on permitted evidence in the bond record. (Mot. 18; Proposed Order, ECF No. 2-9.) The Court issued an order prohibiting Respondents from relocating Petitioner outside the district while the instant motion is pending. (Order Setting Br. Schedule 3.)

///

## II. LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III. DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention."). Respondents argue that 8 U.S.C. § 1252(b)(9) and (g) strip the Court of power to review the petition. (Opp'n 5–7.) For the reasons persuasively and repeatedly articulated in decisions of courts in this circuit, 8 U.S.C. § 1252(b)(9) and (g) do not divest the Court of jurisdiction to consider a claim for relief grounded on a base "distinct from how the government's prosecutorial discretion was deployed" in commencing proceedings, adjudicating cases, or executing removal orders. *Doe v. Noem*, 781 F. Supp. 3d 1055, 1069 (E.D. Cal. 2025) (collecting cases); *see also, e.g., Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) ("[Section § 1252(g)]

applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders. Instead of sweeping in any claim that can technically be said to arise from the three listed actions, the provision refers to just those three specific actions themselves." (cleaned up)); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *20 (E.D. Cal. Nov. 1, 2025) (asserting jurisdiction notwithstanding § 1252(g) where "there is no removal order at issue here and the central issue is Petitioner's continued detention" after termination of release); *Juarez v. Noem*, No. 5:25-cv-02972-RGK-JC, 2025 U.S. Dist. LEXIS 230912, at *5–6 (C.D. Cal. Nov. 21, 2025) (analogizing *Jennings v. Rodriguez*, 583 U.S. 281 (2018), to reject respondents' argument that § 1252(b)(9) barred review of habeas petition).

     A.    **Likelihood of Success on the Merits**

Petitioner is likely to succeed on the merits of her Fifth Amendment procedural due process claim. (Pet. ¶¶ 37–43; Mot. 10–15.)[1]

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty

---

[1] The Court does not opine on Petitioner's likelihood of success on the merits of her other claims.

or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir.

2022) (applying *Mathews* to due process challenge to immigration detention, noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *17 (E.D. Cal. Oct. 17, 2025) (collecting cases extending *Mathews* "to the context of immigration detention").

Here, Petitioner was granted parole into the United States in 2024 and remained out of custody until her detention in 2025. (Pet. ¶¶ 3–7.) The record indicates, and counsel corroborated in a proffer at the hearing, that Petitioner developed significant ties to the community during her time out of custody, including by obtaining steady employment. (*See generally* Pet. Ex. F, at Ex. E, ECF No. 1-7 (presenting letters from community members in support of bond).) Due process protects Petitioner's liberty interest in remaining out of custody, as she lived from the moment ICE paroled her into the United States in 2024.

Under *Mathews*, Petitioner should have been afforded a pre-detention hearing. Petitioner has a substantial private interest in remaining in her home, providing for her family, and participating in the community, all out of custody. *Cf., e.g.*, *C.A.R.V.*, 2025 U.S. Dist. LEXIS 216277, at *26–27 ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); *Garro Pinchi*, 792 F. Supp. 3d at 1034 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); *Fernández López*, 2025 U.S. Dist. LEXIS 205596, at *15 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United

States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

There is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. *Zadvydas*, 533 U.S. at 690–91. The risk of a wrongful deprivation is especially high here given evidence that Petitioner was not afforded adequate process at her January bond hearing.[2] "In bond proceedings, Immigration Judges may take into consideration all relevant and probative evidence, regardless of which party filed it, to determine if the evidence establishes custody factors." *In re Dobrotvorskii*, 29 I.&N. Dec. 211, 213 (2025); *accord* 8 C.F.R. § 1003.19(d). "Custody proceedings must be kept separate and apart from, and must form no part of, removal proceedings. Information adduced during a removal hearing, however, may be considered during a custody hearing so long as it is made part of the bond record." *In re Adeniji*, 22 I.&N. Dec. 1102, 1115 (1999) (citation omitted). "In any bond case in which the parties or the Immigration Judge rely on evidence from the merits case, it is necessary that such evidence be introduced or otherwise reflected in the bond record (such as through a summary of merits hearing testimony that is reflected in the Immigration Judge's bond memorandum)." *Id.* "Otherwise, it will not be part of the bond record available for [the Board of Immigration Appeals'] review on appeal." *Id.*

Here, the immigration judge credited the Department of Homeland Security's proffer about Petitioner's lack of credibility—specifically the Department's doubts

---

[2] The Court confines its analysis of the adequacy of this process to the evaluation of this *Mathews* factor. This Court does not purport to have direct review authority over the decision of an immigration judge. *See* 8 U.S.C. § 1226(e). Nor does the Court opine that the immigration judge made a substantively, as opposed to procedurally, erroneous decision. *See infra* note 4.

1  about her truthfulness about her time in Mexico, which had been briefed in the merits
2  case. (*See generally* Pet. Ex. D, ECF No. 1-5 (transcript of bond hearing).) Based on
3  both "the immigration case and . . . the documents for the bond," the immigration judge
4  found by clear and convincing evidence that Petitioner was a flight risk. (*Id.* at 5.)
5  However, the immigration judge did not designate the merits briefing from the
6  immigration case as an exhibit to the bond proceeding, and the order denying bond,
7  which provides a mere four words of reasoning, does not incorporate the briefing, as *In*
8  *re Adeniji* prescribes. (*See* Pet. Ex. C, ECF No. 1-4 ("Risk of Flight. Credibility.").)
9  Counsel for Respondents conceded at the hearing that the immigration judge should
10 have incorporated the merits briefing into the record, and that any appeal of the bond
11 decision would in all likelihood result in a remand given this procedural deficiency. *Cf.*
12 *In re Adeniji*, 22 I.&N. Dec. at 1115 (remanding for further proceedings where
13 immigration judge "may well have relied on undisclosed evidence from the merits
14 hearing in making the bond determination").

15       In other words, the parties agree that the process Petitioner received at her
16 January 2026 bond hearing before the immigration judge was deficient. Any remedy to
17 that deficiency by way of review by the Board of Immigration Appeals is doubtlessly
18 months away.[3] Accordingly, the post-detention process Petitioner received and will
19 receive is no substitute for the pre-detention process she was owed.[4]

---

[3] With her reply, Petitioner offers a response from the Executive Office for Immigration Review to a Freedom of Information Act request, which indicates that the Board of Immigration Appeals' average processing time for appeals by detained individuals was 190 days for the period of January 1, 2024, to May 31, 2025. (Reply Ex. G, ECF No. 8-1.) At the hearing, Respondents' counsel argued this information should not be credited because it is out of date. But counsel failed to raise any inference that appeal processing times have become any shorter since May 2025, especially given the increased incidence of alien detentions by the federal government since 2025. Fed. R. Evid. 201(b).

[4] The Court distinguishes the disposition here from its decision in *Aguilar v. Semaia*, No. 5:26-cv-00023-MCS-SSC, 2026 U.S. Dist. LEXIS 13697 (C.D. Cal. Jan. 16, 2026).

Finally, as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing. *See, e.g.*, *Fernández López*, 2025 U.S. Dist. LEXIS 205596, at *16 ("In immigration court, custody hearings are routine and impose a minimal cost. If the government wishes to re-arrest petitioner at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (cleaned up)); *Garro Pinchi*, 792 F. Supp. 3d at 1036 ("[D]ue process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of her liberty without any pre-deprivation protections. Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Rodriguez Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 U.S. Dist. LEXIS 113566, at *7–8 (N.D. Cal. June 14, 2025) ("[T]he government's interest in re-detaining Petitioner-Plaintiff without a hearing is low, particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements." (internal quotation marks omitted)).

For these reasons, Petitioner is likely to succeed on her procedural due process claim.

///

---

There, after months of detention, the petitioner received a bond hearing before an immigration judge, who determined that the petitioner posed a danger to the community. *Id.* at *4–5. The Court reasoned that, although the petitioner should have received a pre-deprivation hearing, the bond hearing afforded the petitioner adequate procedural safeguards to mitigate the risk of an erroneous deprivation. *Id.* at *13–15. The petitioner there challenged the immigration judge's *substantive* decision to deny bond based on his danger to the community, which was beyond the scope of the district court's jurisdiction. *Id.* at *15–16. Here, in contrast, Petitioner argued, and Respondents effectively conceded, that the bond hearing she received was *procedurally* inadequate to protect her liberty interest.

### B. Irreparable Harm

Petitioner has established irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Given the Court's determination that Petitioner is likely to succeed on the merits of her due process claim and, thus, her present detention is likely unlawful, Petitioner faces irreparable harm absent injunctive relief.

### C. Balance of Equities and Public Interest

The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with a choice 'between [minimally costly procedures] and preventable human suffering,' as discussed above, the Court concludes 'that the balance of hardships tips decidedly in [petitioner's] favor." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 U.S. Dist. LEXIS 132500, at *23 (E.D. Cal. July 11, 2025) (alterations in original) (quoting *Hernandez*, 872 F.3d at 996). These factors favor relief.

///

### D. Summary

All factors strongly favor injunctive relief. The Court grants a preliminary injunction requiring Petitioner's forthwith release and enjoining Respondents from re-detaining her without providing her a pre-detention hearing.

After pronouncing the injunction at the hearing, Petitioner's counsel requested that the Court order that Petitioner be released on the same terms of parole she enjoyed before her detention, and that any further detention hearing be subject to a clear-and-convincing evidence standard. The Court declines to do so at this time. Here, the principle that preliminary injunctive relief should preserve or restore the status quo ante litem, *see, e.g.*, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000), stands in tension with both the nature of habeas proceedings, which are available to those who are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), and the "executive and legislative primacy" over immigration matters, *United States v. Guillen-Cervantes*, 748 F.3d 870, 875 (9th Cir. 2014); *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("[C]ontrol over matters of immigration is a sovereign prerogative, largely within the control of the Executive and the Legislature. The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause . . . ."). On this limited briefing and record, the Court cabins relief to what the great writ clearly affords Petitioner: release from custody in violation of due process.

The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." (internal quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx), 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal harms suffered by the government, the Court will not require a security.").

///

## IV. CONCLUSION

The Court grants the motion in substantial part. The Court issues a preliminary injunction as follows:

(1) Respondents shall release Petitioner from detention forthwith.

(2) Respondents and all of their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are enjoined from re-detaining Petitioner without providing her a pre-detention hearing before a neutral adjudicator.

Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: February 2, 2026

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE